IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 14-4433(L); 14-4434

———————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellant,*

v.

VICTORIA L. SPROUSE,

*Defendant - Appellee.*

———————————

Appeal from the United States District Court
for the Western District of North Carolina

*The Honorable Martin K. Reidinger, District Judge*

———————————

BRIEF OF THE UNITED STATES

———————————

Jill W. Rose                       William M. Miller
Acting United States Attorney      Assistant United States Attorney
                                   227 West Trade Street
                                   Carillon Building, Suite 1650
                                   Charlotte, North Carolina   28202
                                   (704) 344-6222

*Attorneys for the United States of America*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................iii

JURISDICTIONAL STATEMENT .........................................................1

ISSUES PRESENTED ..............................................................................1

STATEMENT OF THE CASE ...................................................................2

    1.    Sprouse is convicted of eighteen separate counts stemming from her participation in three mortgage fraud conspiracies, in which she exploited her role as the closing attorney to defraud lenders ......................................................................2

    2.    As Sprouse's mortage fraud trial and appeal progress, she engages in another scheme to defraud, hiding income and concealing assets from the bankruptcy court and her creditors ………………………………………………………5

    3.    The district court varies downward more than 150 months from the low end of the guidelines and, in so doing, refuses to consider Sprouse's post-offense bankruptcy fraud but instead orders that her sentence run consecutively to any future sentence, including any sentence imposed in the bankruptcy fraud case……. ......................................................................7

SUMMARY OF THE ARGUMENT ........................................................ 12

ARGUMENT

I.     The district court committed procedural error when it refused to consider Sprouse's post-offense bankruptcy fraud in determining the appropriate sentence, despite recognizing the relevance of her criminal conduct to her history and characteristics ..................... 14

       A.     Standard of Review ..................................................... 14

       B.     Discussion .................................................................. 15

II.    The district court exceeded its authority when it ordered that Sprouse's sentence in this case run consecutively to any future sentence, including the sentence in her bankruptcy fraud case ... 20

       A.     Standard of Review ..................................................... 20

       B.     Discussion .................................................................. 20

CONCLUSION ................................................................................. 22

REQUEST FOR DECISION ON THE BRIEFS WITHOUT
            ORAL ARGUMENT ............................................................ 23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Gall v. United States*, 552 U.S. 38 (2007) ........................................ 14, 15

*Pepper v. United States*, 131 S. Ct. 1229 (2011) .............................. 15, 16

*Setser v. United States*, 132 S. Ct. 1463 (2012) ..................................... 21

*Skilling v. United States*, 561 U.S. 358 (2010) ........................................ 5

*Texas v. McCullough*, 475 U.S. 134 (1986) ............................................ 17

*Williams v. New York*, 337 U.S. 241 (1949) ........................................... 15

*United States v. Jackson*, 254 F. App'x 434 (5th Circuit 2007) ............. 16

*United States v. Montez-Ruiz*, 745 F.3d 1286 (9th Cir. 2014) ............... 21

*United States v. Smith*, 472 F.3d 222 (4th Cir. 2006) ...................... 20, 21

*United States v. Sprouse*, 517 F. App'x 199 (4th Cir. 2013) ........... passim

*United States v. Susi*, 674 F.3d 278 (4th Cir. 2012) ............................. 14

*Wasman v. United States*, 468 U.S. 559 (1984) ..................................... 17

**Statutes**

18 U.S.C. § 3231 ....................................................................................... 1

18 U.S.C. § 3584(a) ................................................................................. 21

18 U.S.C. § 3661 ................................................................................ 15

28 U.S.C. § 1291 .................................................................................. 1

iv

## JURISDICTIONAL STATEMENT

The United States appeals the sentence imposed by the district court, following Defendant Victoria L. Sprouse's conviction on eighteen counts stemming from her participation in three distinct mortgage fraud conspiracies.   The district court's subject matter jurisdiction derived from 18 U.S.C. § 3231.   The district court entered judgment on April 28, 2014, Supp. J.A. 246–52, and the government filed a timely notice of appeal on May 23, 2014, Supp. J.A. 253–54.   One week later, Sprouse filed a notice of appeal.   Supp. J.A. 155–56.   This Court's jurisdiction to consider this appeal is premised on 28 U.S.C. § 1291.

## ISSUES PRESENTED

I.    Whether the district court committed procedural error by categorically refusing to consider Sprouse's post-offense bankruptcy fraud as a sentencing factor, despite its recognition that Sprouse's commission of a new fraud was relevant and showed her "propensity for dishonesty."

II.    Whether the district court erred by ordering that Sprouse's sentence run consecutively to any "term of confinement that is imposed

by this or any other court regarding any other matter, including but not limited to, the bankruptcy fraud charge."

## STATEMENT OF THE CASE

1. <u>Sprouse is convicted of eighteen separate counts stemming from her participation in three mortgage fraud conspiracies, in which she exploited her role as the closing attorney to defraud lenders</u>.

Between 2000 and 2004, as part of a concerted scheme to defraud lenders, Sprouse made countless misrepresentations in connection with real estate transactions and loan applications. *United States v. Sprouse*, 517 F. App'x 199, 201–02 (4th Cir. 2013) (unpublished) (summarizing Sprouse's fraud). Exploiting her role as the closing attorney and notary public for the fraudulent transactions, Sprouse defrauded banks and individuals through three separate mortgage fraud schemes, each involving different coconspirators. J.A. 559, 561, 564, 1086–91.

The first scheme, which accounted for the majority of Sprouse's fraudulent transactions, was a flip mortgage fraud scheme, in which Sprouse and her coconspirators arranged for the purchase and resale of properties at an inflated price. J.A. 249–50, 292, 545–47, 554–56, 564,

727, 1090.   In the flip scheme, the first transaction was conducted in cash, and the inflated resale was made possible by a loan from an unknowing lender, who offered the loan based on an inflated appraisal, falsified loan application, and bogus title opinion.   J.A. 556, 561–66, 588–91, 733, 815.   Sprouse's second fraud was a primary residence scheme, in which Sprouse and her coconspirators prepared and submitted loan applications in which they falsely represented that the buyer would use the property as her primary residence to obtain more favorable financing terms from the bank.   J.A. 1200–03, 1225–29, 1239–42, 1273–1300.   Finally, in the third scheme, the decorator distribution scheme, Sprouse and her coconspirators enabled purchasers to buy homes without providing a down payment by fraudulently concealing the down-payment funds as a decorator disbursement.   J.A. 793–97, 1151–56, 1166–74, 1374–88; *see also Sprouse*, 517 F. App'x at 201–02 (summarizing Sprouse's three mortgage fraud schemes).

In total, Sprouse participated in more than 200 fraudulent transactions in connection with the three schemes.   *Sprouse*, 517 F. App'x at 201.   Through the course of the fraudulent transactions,

3

Sprouse abused her trusted position as the "eyes and ears of the lender" in her capacity as the closing attorney, *see* J.A. 147, 195, 931, choosing instead to defraud lenders by, among other things, preparing and submitting false title opinions, filing false deeds of trust, delaying the recording of documents to hide the source of subordinate financing, and falsely notarizing and backdating documents, *Sprouse*, 517 F. App'x at 201. While Sprouse profited from the schemes, receiving nearly $235,000 in attorney's fees, the primary lenders lost millions of dollars, one bank ultimately went out of business, and individual purchasers were left financially ruined with worthless properties. J.A. 401–02, 463–64, 915, 941, 1134–35.

Following an eight-day trial, a jury found Sprouse guilty of eighteen counts based on her participation in the three fraud schemes, including three counts of conspiracy to commit mail, wire, and bank fraud; two substantive counts of mail fraud; nine substantive counts of bank fraud; two counts of conspiracy to commit money laundering; one count of promotional money laundering; and one count of money laundering involving criminally derived property. J.A. 39–79, 2105–12.

4

Prior to sentencing, Sprouse moved for a new trial in light of the United States Supreme Court's holding in *Skilling v. United States*, 561 U.S. 358, 368 (2010), limiting the scope of honest services fraud to cases involving bribery and kickback schemes.   Because Sprouse's fraud convictions included allegations of pecuniary fraud and honest services fraud, Sprouse argued that a new trial was necessary because it was "impossible to know that the verdict was not based solely on the invalid honest services theory."   J.A. 2122–28.   The district court agreed and granted Sprouse a new trial on all counts.   J.A. 2391–2430.

On appeal, this Court reversed the district court's order awarding a new trial, holding that Sprouse failed to meet her burden of showing "that her convictions actually rested on the invalid honest-services" theory.   *Sprouse*, 517 F. App'x at 207.   In light of its holding, this Court reinstated Sprouse's convictions and remanded for resentencing.   *Id.*

2. <u>As Sprouse's mortgage fraud trial and appeal progress, she engages in another scheme to defraud, hiding income and concealing assets from the bankruptcy court and her creditors.</u>

A week before her mortgage fraud trial began, Sprouse declared bankruptcy, claiming accumulated liabilities in excess of $4.4 million.

5

Supp. J.A. 295.   Beginning immediately, and continuing for about two years, Sprouse engaged in a scheme to defraud the bankruptcy court and her creditors by hiding income and assets.   Supp. J.A. 295–98, 320–21. As part of her bankruptcy fraud scheme, Sprouse concealed income she received from beach-front rental properties, used a secret bank account in her sister's name, convinced her other sister to claim expenses for reimbursement from the bankruptcy estate related to the rental properties, and lied to her own attorney and the bankruptcy trustee to conceal her fraud.   Supp. J.A. 295–21.

The grand jury for the Western District of North Carolina charged Sprouse with obstruction of the bankruptcy proceeding, concealing a bank account in a bankruptcy case, five counts of bankruptcy fraud, and embezzlement from the bankruptcy estate.   Supp. J.A. 302–18. Sprouse ultimately pled guilty to the embezzlement count, consistent with the terms of a written plea agreement.   Supp. J.A. 277.   As part of the agreement, the parties entered into a binding recommendation, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, providing that, upon acceptance of the plea, the district court would be

6

bound to run any sentence imposed for the bankruptcy fraud concurrently with Sprouse's sentence in the mortgage fraud case.   *See* Supp. J.A. 242–43.[1]

3.   <u>The district court varies downward more than 150 months from the low end of the guidelines and, in so doing, refuses to consider Sprouse's post-offense bankruptcy fraud but instead orders that her sentence run consecutively to any future sentence, including any sentence imposed in the bankruptcy fraud case.</u>

Consistent with this Court's opinion, the district court conducted Sprouse's sentencing hearing on remand, the Honorable Martin Karl Reidinger presiding.   Supp. J.A. 41–245.   At the outset, the court considered a series of objections raised by Sprouse, challenging the applicable guidelines range.   Supp. J.A. 85–144.   In calculating the guidelines, the court began with a base offense level of six and, based on a stipulation by the parties, added 18 levels for a loss between $2.5 and 7 million.   Supp. J.A. 75–76, 84.   After ruling that enhancements for ten or more victims, the use of sophisticated means, jeopardizing the financial solvency of a bank, money laundering, obstruction of justice,

---

[1]Although Sprouse has pled guilty in the bankruptcy fraud case, consistent with her plea agreement, the district court, the Honorable Max O. Cogburn, Jr., presiding, has not scheduled sentencing.   *See United States v. Sprouse*, 3:12-cr-200 (W.D.N.C.)

7

and the use of special skill or a position of trust all applied, the court calculated a total offense level of 38, which, when coupled with Sprouse's criminal history category of I, resulted in a guidelines range of 235 to 293 months in prison. Supp. J.A. 143–44.

As to the appropriate sentence, Sprouse argued for a substantial downward variance, requesting a sentence of 48 months in prison. Supp. J.A. 181–97. In support, Sprouse maintained that she was merely a "functionary" in the fraud schemes and had "relatively low culpability." Supp. J.A. 184–86. Sprouse also argued that there was no need to protect the public from future crimes because she no longer had a law license. Supp. J.A. 194. Several of Sprouse's friends spoke on her behalf, portraying Sprouse as "naïve," overly trustworthy, and "vulnerable" to manipulation. Supp. J.A. 174–76.

In response, the government recommended a guidelines sentence, citing evidence from trial showing that Sprouse was "very active" in the fraud, that she was the common link between the three conspiracies, and that her conduct was "deliberate, extensive" and involved "hundreds of transactions." Supp. J.A. 198–211. As part of its discussion of

8

Sprouse's history and characteristics and to rebut Sprouse's arguments, the government sought to present evidence and argument related to the bankruptcy fraud Sprouse committed during the pendency of the trial and first appeal.    Supp. J.A. 148–49.

After Sprouse objected "to any reference" to the bankruptcy fraud, Supp. J.A. 148–49, 151, 206, the district court prohibited the government from presenting additional evidence, permitting the government to "build a little bit of a record" through argument but ruling that punishment for the bankruptcy fraud was the exclusive responsibility of the district court judge assigned to that separate case, Supp. J.A. 206. Recognizing that the court "[was] not going to consider it," the government stated for the record that Sprouse's new fraud against the bankruptcy court and her creditors was "extremely relevant" to her history and characteristics and to rebut Sprouse's argument that she was an otherwise selfless, law-abiding functionary who had been manipulated by others.    Supp. J.A. 207.

After hearing from both sides, the district court varied downward more than 150 months from the low end of the guidelines and sentenced

9

Sprouse to 78 months in prison.   Supp. J.A. 220–36.   At the outset of its explanation, the court stated that it viewed the guidelines "to be of relatively little value" in this case.   Supp. J.A. 222–25.   In support of its decision to vary downward substantially, the court credited Sprouse's argument that she was a mere "functionary" in the fraud schemes, who had been "taken advantage of" by others and acted out of "blind faith." Supp. J.A. 223–24, 231.   The court recognized that, as the closing attorney, Sprouse was the person entrusted by the lender with "stop[ping] the mortgage fraud from taking place" but "tempered" its consideration of that aggravating factor by taking "judicial notice" of the mortgage lending practices in the early 2000s.   Supp. J.A. 230–32.   The court further explained that its decision to vary downward was driven by how much "Sprouse ha[d] already lost," the public humiliation she faced, and the "12-year ordeal" she endured, including the circumstances of her pre-sentence release.   Supp. J.A. 233–35.

As for the government's contention that many of the arguments credited by the district court were rebutted by Sprouse's commission of another fraud during the pendency of the mortgage fraud case, the court

10

made clear that it had "removed [the bankruptcy fraud] from [its] reasoning" altogether. Supp. J.A. 235. The court declined to consider the bankruptcy fraud in connection with Sprouse's history and characteristics despite explicitly recognizing that Sprouse's post-offense criminal conduct demonstrated "a continued propensity for dishonesty." Supp. J.A. 235. In the court's view, the bankruptcy fraud was separate, and punishment for that offense was to be "left entirely" to the judge who sentenced Sprouse for her conviction in that case. Supp. J.A. 235. Although the court refused to consider Sprouse's post-offense bankruptcy fraud, the court ordered that the sentence imposed in this case run consecutively to any sentence "imposed by this or any other court regarding any other matter, including but not limited to, the bankruptcy fraud charge." Supp. J.A. 237.

The government objected to the sentence generally and to the condition that Sprouse's sentence run consecutively to any future sentence in particular, reminding the court that the parties had jointly agreed that Sprouse's sentence in the bankruptcy fraud case would run concurrently with the sentence imposed in this case. Supp. J.A. 242–43.

11

In response, the court stated that the potential for conflicting judgments was "no concern of [its]" and reiterated that it had "fashioned the sentence in this case ignoring to the degree [it] [could] the existence of th[e] bankruptcy fraud issue."   Supp. J.A. 243.

## SUMMARY OF THE ARGUMENT

The district court made two related errors during sentencing that require reversal and a remand for resentencing.   First, the court's decision not to consider Sprouse's post-offense bankruptcy fraud amounts to procedural error, because, in so ruling, the court ignored a relevant sentencing factor.   It is well established that, in selecting the appropriate sentence, courts must make a complete and holistic assessment of a defendant's history and characteristics.   By refusing to consider Sprouse's fraud on the bankruptcy court, the district court ignored key evidence that, as the court recognized, shows a "propensity for dishonesty" and is, therefore, relevant to Sprouse's history and characteristics.   *See* Supp. J.A. 235.   Moreover, the court's decision to artificially blind itself to Sprouse's post-offense criminal conduct not only omitted consideration of a critical factor, it also distorted the court's

12

analysis of other relevant sentencing factors, including several of the factors that the court cited in support of its substantial downward-variance sentence.

Second, the district court erred when it ordered that Sprouse's sentence run consecutively to any future sentence, including her sentence in the bankruptcy fraud case. Although the court refused to consider the bankruptcy fraud in selecting Sprouse's sentence in this case, it is clear from the court's order that the sentences run consecutively that the court viewed Sprouse's post-offense criminal conduct as deserving of additional punishment. Because one federal court cannot infringe on the authority of another by ordering that its sentence run consecutively to an anticipated future federal sentence, however, the court's method of ensuring that Sprouse receive additional punishment for her bankruptcy fraud exceeded its authority. Accordingly, a remand is necessary to permit the district court to structure a sentence that properly accounts for Sprouse's post-offense bankruptcy fraud, while adhering to its statutory authority.

13

## ARGUMENT

I. **The district court committed procedural error when it refused to consider Sprouse's post-offense bankruptcy fraud in determining the appropriate sentence, despite recognizing the relevance of her criminal conduct to her history and characteristics.**

### A.    Standard of Review

This Court reviews the sentence imposed by the district court for reasonableness under an abuse of discretion standard. *United States v. Susi*, 674 F.3d 278, 282 (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). In reviewing the reasonableness of a sentence, this Court first considers whether the district court committed a significant procedural error, such as improperly calculating the guidelines range or failing to consider relevant sentencing factors. *Gall*, 552 U.S. at 51. If this Court finds no procedural error, it will then proceed to consider the substantive reasonableness of the sentence, taking into account the totality of the circumstances, including the extent of any variance from the guidelines range. *Id.*

14

**B.    Discussion**

It is well established that the failure to consider relevant

sentencing factors amounts to procedural error.    *Id.* at 51.    In defining

the scope of the relevant factors for consideration, Congress and the

Supreme Court have directed sentencing courts to consider "the fullest

information possible concerning the defendant's life and characteristics"

when selecting the appropriate sentence.    *Williams v. New York*, 337

U.S. 241, 246–47 (1949); *see also* 18 U.S.C. § 3661 ("No limitation shall

be placed on the information concerning the background, character, and

conduct of a person convicted of an offense which a court . . . may receive

and consider for the purpose of imposing an appropriate sentence.").    To

that end, the Supreme Court has prohibited the adoption of "categorical

bar[s]" on the consideration of evidence related to a defendant's history

and characteristics, even when that evidence relates to conduct that

occurred after conviction    *Pepper v. United States*, 131 S. Ct. 1229, 1242

(2011).

In *Pepper*, the Court held that "a district court may consider

evidence of a defendant's rehabilitation since his prior sentencing and

15

that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range."  131 S. Ct. at 1241.  The Court recognized that such evidence "may be highly relevant to several of the [sentencing] factors that Congress has expressly instructed district courts to consider," including the "history and characteristics of the defendant," as well as the need for the sentence imposed to "afford adequate deterrence" and "protect the public from further crimes of the defendant."  *Id.* at 1242 (citing § 3553(a)(1), (a)(2)(B)–(C)).

Like post-conviction rehabilitation, a defendant's post-offense criminal behavior is just as, if not more, important to a full assessment of the sentencing factors.  *See, e.g., United States v. Jackson,* 254 F. App'x 434, 456–57 (5th Cir. 2007) (unpublished) (remanding for re-sentencing based, in part, on the district court's failure to acknowledge defendant's propensity for recidivism, where defendant committed a new crime post-indictment).  For example, in a case in which the defendant was retried following a successful appeal, the Supreme Court held that the sentencing court was justified in increasing the defendant's sentence based on a criminal conviction obtained after the defendant's first

16

sentencing hearing, recognizing that the failure to do so "would [be] inappropriate." *Wasman v. United States,* 468 U.S. 559, 570 (1984). Similarly, the Court has observed that a defendant who commits new crimes shortly after his release from prison "clearly poses a greater danger to society than one who commits crimes less often" and that to foreclose consideration of such facts would be "wholly incompatible with modern sentencing standards." *Texas v. McCullough,* 475 U.S. 134, 144 (1986). "[I]f anything this focus would require rather than forbid the consideration of the relevant evidence bearing on sentencing since 'highly relevant—if not essential—to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.'" *Id.* (quoting *Wasman*, 468 U.S. at 564).

The district court violated these principles in this case when it removed any consideration of Sprouse's post-offense bankruptcy fraud from its consideration of the appropriate sentence. Despite recognizing that Sprouse's criminal conduct was relevant because it showed her "propensity for dishonesty," *see* Supp. J.A. 235, the court flatly refused to

17

consider the brazen fraud Sprouse committed while on bond during the pendency of her mortgage fraud case.   In so ruling, the court eliminated from consideration a critical factor in Sprouse's history and characteristics, namely, that she is a recidivist fraudster who committed a new two-year fraud scheme beginning during the pendency of her mortgage fraud trial and continuing following her conviction.   The court's blanket refusal to factor Sprouse's new crime into its sentencing determination deprived the court of a complete picture of Sprouse, in violation of Congress's and the Supreme Court's directives.   The court's categorical refusal to consider key evidence related to Sprouse's history and characteristics and the need for deterrence and to protect the public amounts to procedural error.

Not only did the district court's ruling run headlong into the well-established rule requiring a holistic examination of a defendant's background and characteristics at sentencing, the court's decision to artificially blind itself to Sprouse's post-offense bankruptcy fraud also distorted the court's consideration of the other sentencing factors.   For example, Sprouse's commission of a new fraud following her mortgage

18

fraud conviction effectively rebuts the argument, credited by the district court, that Sprouse was an inexperienced "functionary" in the mortgage fraud schemes who was targeted by a series of real criminals in the three mortgage fraud conspiracies due to her trusting nature.   Contrary to the picture painted by Sprouse at sentencing, when considered as a whole, Sprouse's history and characteristics show that she participated in at least four different fraud schemes, one of which she committed under the nose of federal probation following a federal fraud conviction.   Similarly, the court-ordered special conditions of Sprouse's release appear less like the punitive, torturous experience the district court found, when one considers that they were imposed as a result of her commission of new crimes, including the bankruptcy fraud.   Finally, the notion that Sprouse is unlikely to reoffend is directly contradicted by the fact, ignored by the district court, that she initiated a new fraud during the pendency of this case that continued following her conviction.

As these examples illustrate, consideration of Sprouse's post-offense bankruptcy fraud is necessary to properly evaluate her history and characteristics.   The district court's ruling omitting any

19

consideration of Sprouse's post-offense criminal conduct left the court with an incomplete picture of Sprouse's background and skewed its consideration of many of the factors the court relied on in support of its decision to vary downward by more than 150 months.   The district court's refusal to consider Sprouse's new crime amounts to procedural error and requires a remand with instructions that the court resentence Sprouse based on a complete analysis of her history and characteristics and an uncompromised view of the other relevant sentencing factors.

**II.    The district court exceeded its authority when it ordered that Sprouse's sentence in this case run consecutively to any future sentence, including the sentence in her bankruptcy fraud case.**

### A.    Standard of Review

A district court's authority to order that its sentence run consecutively to a future sentence is a question of statutory interpretation that this Court reviews *de novo*.   *United States v. Smith*, 472 F.3d 222, 225 (4th Cir. 2006).

### B.    Discussion

By statute, a district court has authority to order that its sentence "run concurrently [with] or consecutively [to]" another sentence only

20

when the defendant is sentenced to "multiple terms of imprisonment . . . at the same time" or is "already subject to an undischarged term of imprisonment." 18 U.S.C. § 3584(a). Interpreting this provision, this Court has held that "[t]he plain language of [the] statute does not grant a district court authority to order that its sentence run consecutively to a future sentence" imposed by another federal district court. *Smith*, 472 F.3d at 225; *United States v. Montez-Ruiz,* 745 F.3d 1286 (9th Cir. 2014) (reaching the same result and collecting cases). In other words, "a court cannot impose its sentence consecutively to a sentence that does not yet exist." *Smith*, 472 F.3d at 226. A contrary rule would, as this Court reasoned, "place one federal court in the position of abrogating the sentencing authority of another." *Id.* at 227.[2]

---

[2]In *Setser v. United States*, 132 S. Ct. 1463, 1467 (2012), the Supreme Court adopted a different rule when a federal court considers whether its sentence should run consecutive to or concurrent with a future *state* sentence, holding that federal district courts have discretion to order that a federal sentence run consecutive to an anticipated, but not-yet-imposed state sentence. In so holding, the Court implied, but did not expressly hold, that "the same rule would not apply to an unanticipated, but not-yet-imposed *federal* sentence." *Montes-Ruiz*, 745 F.3d at 1291–92 (interpreting the Court's "dicta" in footnote 4 of *Setser*).

In light of the forgoing, the district court erred by ruling that the sentence imposed in this case should run consecutively to any "term of confinement that is imposed by this or any other court regarding any other matter, including but not limited to, the bankruptcy fraud charge." *See* Supp. J.A. 237.   By ordering that Sprouse's future sentence for the bankruptcy fraud run consecutive to her sentence for the mortgage fraud, it is apparent that the court viewed Sprouse's new crime as deserving of additional punishment, despite its refusal to consider the bankruptcy fraud as a sentencing factor in this case.   The court's chosen method of accounting for Sprouse's bankruptcy fraud conduct, by ordering that the sentences run consecutively to a future federal sentence, however, exceeded its authority.   In light of the error, a remand is necessary to allow the district court to structure a sentence that properly accounts for Sprouse's post-offense bankruptcy fraud, while adhering to its statutory authority.

## <u>CONCLUSION</u>

For the forgoing reasons, the government asks that this Court vacate the district court's judgment and remand for resentencing.

22

## <u>REQUEST FOR DECISION ON THE BRIEFS<br>WITHOUT ORAL ARGUMENT</u>

The United States does not believe that oral argument will assist the Court in any material way and requests that this appeal be decided on the briefs.

Respectfully submitted, this the 8th day of December, 2014.

ANNE M. TOMPKINS
UNITED STATES ATTORNEY
s/ William M. Miller
William M. Miller
NC Bar Number # 36946
Assistant United States Attorney
227 West Trade Street
Carillon Building, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Fax: (704) 344-6229
E-mail: William.Miller@usdoj.gov

23

## <u>CERTIFICATION OF COMPLIANCE</u>

      1.    This Brief has been prepared using (select and complete only one):

<u>  x   </u>      Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT sans serif typeface such as Arial).  Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point): <u>Microsoft Word, Century Schoolbook, 14 point</u>

<u>     </u>Twelve point, monospaced typeface (such as Courier or Courier New).  Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, Courier 12 point):

      2.    EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains (select and complete only one):

      3.<u>    </u>    Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

<u> 4127 </u>Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

<u>        </u> Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

      I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

                        s/ William M. Miller
                        Assistant United States Attorney
                        USAO Charlotte, NC

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day served a copy of the above upon Defendant herein by serving his attorney of record, William R. Terpening, through electronic case filing.

This the 8th day of December, 2014.

s/ William M. Miller
Assistant United States Attorney
USAO Charlotte, NC